# Application of 18 U.S.C. § 207(c) to Proposed Communications Between Retired Navy Flag Officer and Marine Corps Commanders in Iraq Regarding Security Issues

Although more detailed information is needed to make a complete determination in this fact-sensitive area, it appears that 18 U.S.C. § 207(c) would forbid at least some of the proposed communications between a retired Navy flag officer and Marine Corps commanders regarding the security situation in Iraq.

September 13, 2005

MEMORANDUM OPINION FOR THE GENERAL COUNSEL OF THE NAVY

Through the General Counsel of the Department of Defense, you have asked for our opinion whether 18 U.S.C. § 207(c) (2000) prohibits certain proposed communications between a retired Navy flag officer, now employed by a defense contractor under contract to provide services to the United States Air Force and Army Corps of Engineers in Iraq, and United States Marine Corps commanders. *See* Letter for Steven G. Bradbury, Acting Assistant Attorney General, Office of Legal Counsel, from William J. Haynes II, General Counsel, Department of Defense (Aug. 17, 2005). These communications "would seek to effect changes . . . in the current state of security" in parts of Iraq and to "make recommendations" about procedures for pursuing the insurgents responsible for attacks on United States military personnel and private contractors. Memorandum for the Assistant Attorney General, Office of Legal Counsel, from Alberto J. Mora, General Counsel of the Navy, *Re: Request for Legal Opinion* at 1 (Aug. 10, 2005) ("Mora Memorandum"). Although more detailed information is needed to make a complete determination in this fact-sensitive area, it appears that at least some of the proposed communications would be forbidden by section 207(c).

## I.

A rear admiral retired from the Navy and became employed as the President of a company ("Company") whose parent entity ("Parent") is currently under contract with the United States Air Force and United States Army Corps of Engineers to provide construction and other services in Iraq.[*] As President of the Company, the retired officer oversees construction of two bases that the firm is building for the new Iraqi army in an area of the country under the responsibility of the United States Multi-National Force-West ("MNF-W"). The MNF-W command, com-

---

[*] Editor's Note: For privacy reasons, the name and affiliation of the officer in question have been redacted from the published version of this opinion.

posed primarily of Marine Corps personnel, reports directly to CENTCOM, which in turns reports to the Secretary of Defense.

In recent months, attacks by Iraqi insurgents have killed or injured a number of the Company's employees and subcontractors. Given the security situation, the Company seeks to coordinate more effectively with the MNF-W commanders responsible for securing the area in which the Company is working to fulfill its contractual obligations. Given the retired officer's military experience, the Parent would like him to communicate directly with MNF-W personnel on these matters. More specifically,

> the Parent wants the retired officer to provide information related to his observations about security and defense, areas within the retired officer's expertise. The Parent desires for the retired officer to ask questions and seek information related to how the Parent's employees can better protect themselves, including communications regarding the Parent's scope of work and its coordination of on-site activity.

Letter for Marilyn L. Glynn, Acting Director, Office of Government Ethics, from Michael R. Rizzo, McKenna, Long & Aldridge LLP, *Re: Request for Formal Advisory Opinion Pursuant to 5 CFR 2638.301 et seq.* at 3 (May 31, 2005) ("Rizzo Letter"). The Parent believes that effective communications on these issues between the retired officer and Marine Corps personnel is necessary to ensure the security of the Company's employees and will potentially save lives. *Id.*

## II.

Section 207(c) of title 18 provides criminal penalties for a "senior [officer] of the executive branch" who

> within 1 year after the termination of his or her service or employment as such officer or employee, knowingly makes, with the intent to influence, any communication to or appearance before any officer or employee of the department or agency in which such person served within 1 year before such termination, on behalf of any other person (except the United States), in connection with any matter on which such person seeks official action by any officer or employee of such department or agency.

18 U.S.C. § 207(c)(1). Thus, as a recently retired senior naval officer,[1] the retired officer is barred from making certain types of communications with "any officer

---

[1] There is no dispute that flag officers such as the retired officer qualify as "senior personnel" within the meaning of section 207(c). *See* 18 U.S.C. § 207(c)(2)(iv).

or employee" of the Department of the Navy during the statute's one year "cooling off" period. *Cf.* 5 C.F.R. § 2641, app. B (2005) (designating the Department of the Navy as "distinct and separate" from other components of the Department of Defense for purposes of section 207). And because the Marine Corps is part of the Department of the Navy, *see* 32 C.F.R. § 700.204(a) (2004), the prohibition extends to communications between the retired officer and Marine Corps personnel in Iraq.

At the same time, however, "[s]ection 207 does not by its terms forbid a former Executive Branch official from communication with his former agency in all circumstances." Memorandum for Stuart M. Gerson, Assistant Attorney General, Civil Division, from Daniel L. Koffsky, Acting Assistant Attorney General, Office of Legal Counsel at 2 (Mar. 15, 1993) ("Gerson Memorandum"). Instead, a communication is prohibited *only* if it is made (1) "with the intent to influence"; (2) "on behalf of any other person (except the United States)"; and (3) "in connection with any matter on which such person seeks official action." In addition, the statute offers a safe harbor to former senior officials who make or provide a statement "which is based on the individual's own special knowledge in the particular area that is the subject of the statement, *if no compensation is thereby received*." 18 U.S.C. § 207(j)(4) (emphasis added). Based on the limited factual information available to us, we believe that most of the communications proposed by the retired officer fall within section 207(c)'s prohibition and are not protected by the "special knowledge" exception. That conclusion, however, does not apply to situations in which the retired officer would do nothing more than request generally available factual information from MNF-W relating to security or other matters relevant to the Company's work.

In the first place, the role contemplated for Mr. Kubic is not that of a behind-the-scenes operative, but rather is a direct and personal one in which Mr. Kubic would be speaking to the Marine Corps officers with the intention that the information or views conveyed be attributed to him. Accordingly, Mr. Kubic would undoubtedly be making "communications" within the meaning of section 207(c). *See "Communications" Under 18 U.S.C. § 207*, 25 Op. O.L.C. 59, 62 (2001) (construing section 207(c) to include an attribution requirement).

Moreover, as we understand the retired officer's proposal, the purpose of at least some of those communications would be to persuade the commanders in MNF-W to use their forces in ways that the retired officer believes will provide better protection for both civilian contractors (including the Company's employees) and military personnel. (We take it that this understanding is what the Rizzo Letter means when it refers to "discussions regarding scope of work and coordination of on-site activity issues." Rizzo Letter at 2.[2]) Insofar as he seeks to engage in

---

[2] In your memorandum requesting a legal opinion, you describe the retired officer's proposal this way: "Through personal communication with local Marine commanders, if authorized, he would seek to effect changes in Marine Corps policy or practice regarding the current state of security around

such communications, the retired officer would clearly be "trying to influence the activities of the agency involved," and thus would satisfy the scienter and "official action" requirements of section 207(c). *Applicability of 18 U.S.C. § 207(c) to the Briefing and Arguing of Cases in Which the Department of Justice Represents a Party*, 17 Op. O.L.C. 37, 43 (1993); *see also* 5 C.F.R. § 2637.204(e) (2005) (section 207(c)'s prohibition on attempting to influence "applies to situations in which there is an appreciable element of actual or potential dispute or an application or submission to obtain Government rulings, benefits or approvals").[3] After all, decisions about how to deploy troops, and about how best to provide protection to military and civilian personnel in a war zone, are "official actions" of a branch of the Armed Forces. Direct communications with members of that branch by a former senior officer made with the goal of influencing those decisions come within the scope of section 207(c).

A different result follows, however, where the retired officer would merely be requesting generally available factual information from MNF-W commanders. OGE has long taken the position, and we have agreed, that a communication aimed solely at eliciting generally available information from a government agency is not made with the requisite "intent to influence" official agency action, and thus is not prohibited by section 207(c). *See* 5 C.F.R. § 2637.204(e); Memorandum for Component Heads, from Timothy E. Flanigan, Assistant Attorney General, Office of Legal Counsel at 8 (Nov. 18, 1992) (noting that section 207(c) "does not apply to requests for factual information"); Memorandum for Tony Schall, Assistant to the Attorney General, from Timothy Flanigan, Principal Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Post Employment Restrictions* at 1 (Aug. 15, 1991) ("Schall Memorandum") (same). The retired officer thus remains free under section 207(c) to seek information or advice from the Marines regarding such matters as the security situation or the steps being taken by the military (or that the Company should take) to protect civilian contractors in Iraq. Although the sparse factual record before us makes it impossible to determine the extent to which the retired officer's proposed communications would actually fall into this category, it seems that at least some may do so. *See, e.g.*, Rizzo Letter at 3 ("the Parent desires for the retired officer to ask questions and seek information related to how the Parent's employees can better protect themselves."). We caution the retired officer, however, that especially where he contemplates communicating with Marine Corps officers himself, the line between

---

Camp India and make recommendations about procedures for pursuing the AIF [Anti-Iraqi Forces] responsible for the mortar attacks." Mora Memorandum at 1.

[3] The Office of Government Ethics ("OGE") regulations contained in 5 C.F.R. pt. 2637 were written with respect to section 207 as it existed prior to its amendment in 1989, but both OGE and this Office have continued to rely on them when interpreting those portions of the statute that were unchanged by the amendments. *See "Communications" Under 18 U.S.C. § 207*, 25 Op. O.L.C. at 60 n.3.

seeking information and providing advice or otherwise attempting to influence decisions or actions may not always be clear, and that it is impermissible to use factual inquiries in an effort to influence the agency to take particular official acts. *See* Schall Memorandum at 2.

Next, we must consider whether the proposed communications—at least the ones that are intended to influence—will be made "on behalf of" someone other than the retired officer (or the United States). "By the express terms of the statute, a former officer or employee is free to communicate information or advice . . . as long as he does not do so 'on behalf of any other person.'" Gerson Memorandum at 2. We have previously opined that this language limits the reach of section 207 to those "communications that are made by one who is acting as an agent or attorney, or in some other representational capacity for another." Memorandum for Michael Boudin, Deputy Assistant Attorney General, Antitrust Division, from J. Michael Luttig, Assistant Attorney General, Office of Legal Counsel, *Re: Application of 18 U.S.C. § 207(a) to Pardon Recommendation Made by Former Prosecutor* at 6 (Oct. 17, 1990) ("Boudin Opinion").[4] The "representational relationship" required by the statute "entails at least some degree of control by the principal over the agent who acts on his or her behalf." *Id.*

Here, because it seems that the retired officer would be speaking not on his own behalf, but rather at the behest and for the benefit of the Company, the statements he proposes to make would clearly satisfy this test. As we understand the situation, the retired officer's communications with MNF-W would be made in his capacity as President of ECCI and would be designed to help improve security in the parts of Iraq where the Company's personnel are working. In that context, it is difficult to deny that the retired officer would be acting "subject to the control or direction" of the firm, and thereby as the firm's agent or representative. Boudin Opinion at 6. Simply put, in this situation the retired officer would not "speak[] for himself alone." Gerson Memorandum at 3. Instead, he would speak for the Company and his efforts to use direct communications with his former department to influence agency action would fall squarely within the prohibitory terms of section 207(c).

Finally, we address the "special knowledge" safe harbor contained in section 207(j)(4). That exception allows a former official to make statements based on the individual's "own special knowledge," but only if "no compensation is thereby received." Even assuming that the security issues that would be the subject of the retired officer's statements would come within his own special knowledge, we agree with OGE that "the receipt of a salary, or other compensation for doing one's job generally, is sufficient, if the statement at issue is made as part of the

---

[4] Although the Boudin Opinion addressed only 18 U.S.C. § 207(a), the language it construed—"on behalf of any other person"—also appears in section 207(c), where it is used in the same way. Relying on the interpretive canon that a phrase that appears in multiple places in the same statute should be given the same meaning in each, we have previously applied the Boudin Opinion's analysis to section 207(c). *See* Gerson Memorandum at 3 & n.3.

individual's duties for his non-federal employer." Letter for Michael R. Rizzo, McKenna, Long & Aldridge LLP, from Marilyn L. Glynn, Acting Director, Office of Government Ethics at 5 (June 8, 2005). We think the best reading of the phrase "no compensation is thereby received" is that it excludes statements made in the ordinary course of an agency relationship for which the speaker receives compensation. In other words, if a former official is paid to represent the interests of a particular person or company, and makes statements aimed at advancing that end, he receives compensation "thereby," even if he is not paid on a statement-by-statement basis. Thus, as a salaried employee of the Company who would be communicating with the Marine commanders in the course of his employment, the retired officer may not take shelter in section 207(j)(4). A contrary conclusion—that a statement may be protected by section 207(j)(4) so long as the speaker is not paid specifically for making it—would impermissibly convert the exception into a mere accounting rule. It would suggest, for instance, that a lawyer could represent a client before the same agency where the lawyer was previously a senior official so long as he received a flat fee rather than an hourly rate. We do not think Congress intended to allow the statutory ban on such communications to be capable of evasion merely by clever bookkeeping.

We certainly understand, and are sympathetic to, the retired officer's pleas that he and his firm face a conflict between the federal ethics laws and the need to take steps to protect his employees from further danger. As described above, however, at least some of the communications proposed by Mr. Kubic would be covered by the language of section 207(c). And, although it contains a number of express exceptions for particular types of communications, *see, e.g.*, 18 U.S.C. § 207(j), the statute makes no exception for emergency situations. Nor is there an exception for communications made in war zones involving issues of safety and security. Given that Congress has not seen fit to legislate such exceptions, we are not at liberty to interpret such provisions into existence merely to bring about a desirable result.

This conclusion about the scope of section 207 does not leave the Company unable to communicate with military personnel in Iraq in order to help protect its personnel. Any Company employee not covered by section 207(c) remains free to discuss security matters (or any other issue) with MNF-W, and certainly may seek to persuade the military commanders to take whatever protective actions are thought necessary. Indeed, so long as he does not act with the intention that the views or information conveyed to Marine officers be attributed to him, the retired officer may play a "behind the scenes" role in such communications. *"Communications" Under 18 U.S.C. § 207*, 25 Op. O.L.C. at 63 (observing that under section 207(c), "former officials can sell their expertise to interested clients, and their clients can present all substantive information or views they wish to federal agencies"). In addition, as described above, the retired officer himself may seek generally available factual information from any military officer or department. And, because the Navy is separate from the Department of Defense for purpose of

the federal ethics laws, *see* 5 C.F.R. § 2641, app. B, the retired officer may always contact and attempt to influence officers and employees of military departments *other* than the Department of the Navy.

STEVEN G. BRADBURY
*Acting Assistant Attorney General*
*Office of Legal Counsel*